**FILED**

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

JUN 0 2 2005

CLERK

| | | |
|---|---|---|
| JENNIFER VAN METER, | ) | Civil No. _C S - S D 4 4_ |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | COMPLAINT |
| | ) | |
| FRESH START CONVENIENCE | ) | |
| STORES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff, by and through her undersigned attorneys, brings this action for damages

and other relief arising from Defendant's conduct; in support of her claims Plaintiff states

as follows:

1.      Plaintiff, Jennifer Van Meter, former female employee of Defendant. brings

this action under Title VII of the Civil Rights Act of 1964.  The actions of Defendant

constitute discrimination on the basis of sex in the form of sexual harassment and/or

retaliation, as more specifically set forth herein.  Plaintiff timely filed a complaint of

sexual harassment with the South Dakota Division of Human Rights.

2.      The South Dakota Division of Human Rights investigated Plaintiff's

allegations, and on or about December 13, 2004, issued its Determination of Probable

Cause, finding that Plaintiff's allegations of discrimination were well founded.  A copy of

the Determination of Probable Cause is attached hereto as Exhibit A.

3.     A Notice of Right to Sue was issued by United States Equal Employment Opportunity Commission on or about March 2, 2005, and received by Plaintiff on or about March 7, 2005.  A copy of the Notice of Right to Sue is attached hereto as Exhibit B.

4.     Jurisdiction is conferred upon this Court per 42 USC § 2000e, and under 28 USC § 1343.  Further, this Court has supplemental jurisdiction over Plaintiff's state law claim under the provisions of 28 USC § 1567.

5.     The venue of this action lies in the Western Division of the United States District Court for the District of South Dakota, as the basis for Plaintiff's federal claims took place within the boundaries of that district

6.     Plaintiff was a female employee of Defendant at all times material hereto.

7.     Defendant is a South Dakota corporation with its principal place of business in Spearfish, South Dakota, and at all times relevant hereto was subject to the coverage of Title VII of the Civil Rights Act of 1964.

8.     Beginning in 2003, Plaintiff was subjected to a hostile work environment by the actions of Defendant's supervising employee, Nik Scott.

9.     Plaintiff complained to Defendant about Scott's behavior, but Defendant took no action to contain or limit the hostile actions of Scott.

10.     Plaintiff subsequently complained to Defendant's human resources director, Rilea Moyer, about Scott's conduct.

11.     Following her discussions and/or complaints to Defendant's human resources director, Plaintiff was subject to disciplinary complaints, was given fewer work hours than previously scheduled, was scheduled for evening and/or night shifts, even though she had previously advised Defendant that these hours presented a difficulty due to child care issues, and was moved to another of Defendant's convenience stores where her hours were cut even further.

12.     At no time prior to Plaintiff's complaints of hostile work environment was she subject to disciplinary actions at the work place, including "write-ups."

13.     As result of the retaliatory treatment given to her, including the disciplinary "write-ups," reduced or changed hours, and/or store changes, Plaintiff was subject to an adverse employment action, and constructively discharged.

14.     Even after leaving the employment of Defendant, Plaintiff has been subject to retaliation and harassment by Defendant's employees.

## COUNT I

## DISCRIMINATION PURSUANT TO TITLE VII

15.     Plaintiff incorporates all previous paragraphs of this Complaint as if fully set forth under this Count.

16.     Plaintiff and Defendant are employee and employer respectively, for the purposes of the definitions set forth in Title VII.

17.     Scott's conduct towards Plaintiff as herein alleged was unwelcome and as such substantially interfered with Plaintiff's employment and created an intimidating,

hostile and offensive work environment. This conduct constituted sexual harassment in direct violation of Title VII. Defendant knew or should have known of the existence of the harassment and failed to take timely and appropriate remedial action.

18.     Defendant's failure to take remedial action, the hostile work environment, its failure to properly investigate and respond to Plaintiff's sexual harassment complaint, and its creation of intolerable working conditions as set forth in the paragraphs above, forced Plaintiff to leave Defendant's employment, thereby constituting a constructive discharge pursuant to Title VII. At all times material herein, the conduct of Scott was that as agent of Defendant, and the wrongful actions of Scott, Moyer, and/or any of the other agents and employees of Defendant were related to their duties and responsibilities as employees of Defendant, and therefore, Defendant is liable for their wrongful conduct.

## COUNT II

## RETALIATION

19.     Plaintiff incorporates all previous paragraphs of this Complaint as if fully set forth under this Count.

20.     As a direct result of Plaintiff engaging in her protected right to report a hostile work environment that she reasonably believed constituted a violation of Title VII and/or South Dakota state laws concerning discrimination, or because Plaintiff made a charge, assisted or participated in an investigation of sexual harassment at her employer, Defendant retaliated against Plaintiff by making Plaintiff's working conditions

intolerable, ultimately resulting in a constructive discharge from Defendant's employment.

## COUNT III

## VIOLATION OF THE SOUTH DAKOTA HUMAN RELATIONS ACT OF 1972

21.     Plaintiff incorporates all previous paragraphs of this Complaint as if fully set forth under this Count.

22.     Defendant's actions complained of in Counts I and II above constitute a violation of the South Dakota Human Relations Act of 1972.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby requests trial by jury of all issues triable by jury in this matter.

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

1.     For all compensatory damages arising from the past, present and future loss of employment, including loss of benefits, loss of career development, loss of future earning capacity, humiliation, past and future medical expenses, embarrassment, loss of reputation, emotional distress, and pain and suffering in an amount to be determined at trial;

2.     For an award by the Court to Plaintiff for back pay, front pay, attorney's fees, costs and disbursements as allowed by law;

3.     For such other and further relief as the Court deems just and equitable in the circumstances.

Dated this __2__ day of June, 2005.

LYNN, JACKSON, SHULTZ & LEBRUN, P.C.

By: _____

Craig A. Pfeifle
Attorneys for Plaintiff
P.O. Box 8250
Rapid City, SD  57709
605-342-2592

6

**STATE OF SOUTH DAKOTA**
**DEPARTMENT OF LABOR**
**DIVISION OF HUMAN RIGHTS**
**PIERRE, SOUTH DAKOTA 57501**

| | |
|---|---|
| In the matter of the Charge of; | ) |
| | ) |
| | ) Charge No. <u>RTEM-04-3572-16</u> |
| <u>Jennifer L. Van Meter</u> | ) |
| Charging Party | ) DETERMINATION OF |
| | ) |
| v. | ) <u>PROBABLE CAUSE</u> |
| | ) |
| <u>Fresh Start</u> | ) |
| Respondent | ) |
| | ) |

The Division of Human Rights has received and reviewed the Charging Party's verified charge, and all of the facts and records developed during the investigation thereof. On the basis thereof, pursuant to the South Dakota Human Relations Act of 1972 (SDCL chapter 20-13) and the Administrative Rules of the South Dakota Commission of Human Rights, ARSD 20:03:04:03, the Division hereby determines that there is probable cause to believe that the Charging Party's allegations of discrimination are well founded.

SOUTH DAKOTA DIVISION OF HUMAN RIGHTS

Dated: ___12/13/04___

Ray T. Falk, Investigator

REVIEWED AND ACCEPTED BY:

James Marsh, Director

**EXHIBIT**

## SUMMARY OF CHARGE

Jennifer L. Van Meter complained that the above-named Respondent engaged in unfair or discriminatory practices with respect to employment because of sex and retaliation in violation of SDCL §§ 20-13-10 and 20-13-26 of the South Dakota Human Relations Act of 1972.

Date of alleged violation:        December 19, 2003
Date of filing:                  April 26, 2004
Date of service of charge:        April 27, 2004

## ISSUES

1. Whether Jennifer L. Van Meter was sexually harassed.

2. Whether Jennifer L. Van Meter was retaliated against by being forced to quit through having her hours cut and being written up, rescheduled, and moved to another store.

## FINDINGS OF FACT

1. On April 23, 2004 the South Dakota Division of Human Rights (Division) received a charge of discrimination from Jennifer L. Van Meter pursuant to SDCL § 20-13-29 and SDCL § 20-13-31 of the South Dakota Human Relations Act of 1972 and 20:03:02:01 and 20:03:02:03 of the Commission's Rules. The charge was also filed with the Denver District Office of the U.S. Equal Employment Opportunity Commission (EEOC) and referred to the Division under section 706(c) of Title VII of the Civil Rights Act of 1964 and pursuant to SDCL § 20-13-8 of the South Dakota Human Relations Act of 1972 and 20:03:02:04 of the Commission's Rules.

2. The Charging Party is Jennifer L. Van Meter (Charging Party).

3. The Respondent is Fresh Start (Respondent) located in Spearfish, South Dakota.

4. Charging Party is a covered employee for purposes of SDCL § 20-13-1(6) and Respondent is a covered employer under SDCL § 20-13-1(7) of the South Dakota Human Relations Act of 1972.

5. Respondent's written policy defines and prohibits harassment based on age, sex, color, race, creed, ancestry, national origin, religion, or disability and provides a complaint procedure.

6. Charging Party stated that Head Clerk Nik Scott (Scott) subjected her to a hostile work environment by his sexual language, jokes, and touching.

7.  Charging Party stated that before Halloween 2003 she complained to Store Manager Sara Ewing (Ewing) who took no action to stop Scott's behavior and that Ewing told her, "That's just Nik, … You'll get used to it."

8.  Charging Party stated that Scott continued to subject her to sexual harassment and that on November 26, 2003 she contacted Owner Mark Schwartz (Schwartz) and told him she wanted Scott's behavior to stop.

9.  Charging Party complained to Schwartz about Scott's conduct and Schwartz instructed her to contact Human Resources Director Rilea Moyer (Moyer) at the corporate office.

10. Charging Party stated that she told Schwartz that Scott was harassing her and making vulgar comments to her and that his behavior made her feel uncomfortable.

11. Respondent stated that on December 9, 2003 Charging Party telephoned Moyer and left a message that she wanted to talk to her about a problem, that Moyer contacted Charging Party and arranged for a meeting on December 10, 2003.

12. Charging Party stated that after she spoke to Moyer she began receiving write ups, her hours were cut, she was scheduled for nights knowing that she would have difficulty finding a babysitter, and was moved to another store where her hours were cut even more.

13. Respondent's schedule for November and December 2003 shows Charging Party worked the following hours:

**November 2003**
- November 3 - 7-3
- November 4 – 7-3
- November 5 – 12-[8]
- November 6 – 5-9
- November 7 – 5-10
- November 8, 9, & 10 – off
- November 11 – 7-3
- November 12 - off
- November 13 – 5-9
- November 14 – 5-9
- November 15 – 10-6
- November 16 - off
- November 17 – 7-2
- November 18 -
- November 19 – 7-2
- November 20 – 9-5
- November 21 – 9-5
- November 22 & 23 – off
- November 24 - 7-3
- November 25 – 7-3
- November 26 - off
- November 27 -
- November 28 – 3-9
- November 29 - 6-2
- November 30 - off

**December 2003**
- December 1 - off
- December 2 – 7-12
- December 3 – 7-12
- December 4 – 2-10

- December 5 – 12-6
- December 6 – 2-9
- December 7 – 7-2
- December 8 & 9 - off
- December 10 – 6-10
- December 11 – 10-4
- December 12 – 4-10
- December 13 – 10-6
- December 14 - 7-2
- December 15 - off
- December 16 – 2-10

- December 17 – 2-10
- December 18 – 2-10
- December 19 - 2-10
- December 20 & 21 - off
- December 22 – 6-10
- December 23 – 2-8
- December 24 & 25 - off
- December 26 - 2-8
- December 27 – 10-6
- December 28 – 2-9

14. Respondent's November and December 2003 schedule shows Charging Party worked the following number of hours per week:
    - Week of November 3 to 9 – 33 hours
    - Week of November 10 to 16 – 24 hours
    - Week of November 17 to 23 – 39 hours
    - Week of November 24 to 30 – 30? hours
    - Week of December 1 to 7 – 38 hours
    - Week of December 8 to 14 – 31 hours
    - Week of December 15 to 21 – 32 hours
    - Week of December 22 to 28 – 31 hours

15. Respondent's December 2003 schedule shows that Scott was scheduled to work 5 days on and 2 days off for each week after December 11th. There was no indication of time off relating to his suspension.

16. Charging Party provided a write-up from Ewing to her dated December 11, 2003 regarding failure to complete designated closing duties. Charging Party was told that if this problem persisted, she would be discharged. Charging Party stated that her file was left out and open on the counter with the write-up in it when she reported to work on December 10, 2003 and that she saw the write-up.

17. Charging Party provided an undated note from Ewing in which Charging Party is advised that she did not perform certain closing duties and that if she is unable to contact Ewing she should contact Scott if there is a problem. Charging Party stated this note was received on December 16, 2003.

18. Charging Party stated that she had no training on closing procedures.

19. Charging Party provided a write-up from Ewing to her dated December 19, 2003 regarding a cash shortage on December 18, 2003. The write-up states that Charging Party and Nathan were working when the shortage occurred.

20. Charging Party stated that Nathan was not written up for the shortage.

21. Charging Party stated that she was never written up before she complained about Scott.

22. Charging Party stated that she was forced to quit because of the retaliatory treatment she received which included write-ups, cut hours, and being scheduled for nights and moved to another store.

23. Respondent stated that Charging Party and Moyer met on December 10, 2004 and Charging Party complained about Scott's language and conduct, that Charging Party stated she had made tape recordings of Scott's behavior and that Moyer could review the tapes, and that Moyer informed Charging Party that she would conduct an investigation.

24. Respondent stated that on December 11, 2003 Moyer interviewed Janice Collister who confirmed that she had a written statement concerning Scott and that Collister's complaints about Scott and Ewing did not involve sexual harassment or a hostile work environment, but involved her concerns about job performance, management style, and perceived favoritism on the part of Ewing towards Scott.

25. Charging Party submitted a copy of Collister's written statement dated November 18, 2003 in which Collister wrote that she worked Scott's shift for him because he said he was taking time off for a medical emergency involving his son, that she saw Scott taking his son to school and believed he had lied about the medical emergency, that she told Ewing about this, and that Ewing did not take any action to learn the truth. Collister wrote that she felt she was forced to quit because Ewing did not take action against Scott.

26. Respondent stated that on December 11th Moyer received a telephone call from Charging Party who requested that she be excused from work after receiving a note from Ewing criticizing her for not completing job assignments from the previous evening, that Charging Party indicated she had not been properly trained to perform closing duties, that Charging Party stated that Scott and Ewing did not follow policy concerning the purchase of items from the store and the timing of payment, and that Scott and Ewing were not aware at this time that Charging Party contacted Moyer about making a complaint.

27. Respondent stated that employee Tammy Villereal (Villereal) said that Charging Party had asked her to file a complaint about Scott, that when Villereal said she had no complaints Charging Party said she should make something up, that Villereal declined to do so, and that Charging Party had not properly performed closing duties on December 13, 2003 and Villereal had to do the work the following morning.

28. Charging Party denied that she asked Villereal to file a complaint and make something up.

29. Respondent stated that Moyer interviewed Scott and Ewing on December 11th, that Scott denied that he harassed Charging Party, that Moyer advised Scott and Ewing that they could not retaliate against Charging Party, that Moyer made the decision to separate Scott and Charging Party after discussing this with Ewing, and that since Charging Party did not have training to open the store she was moved to the afternoon shift.

30. Respondent provided an Employee Performance Coaching Plan dated December 10, 2003 for Sara Ewing and signed by Moyer. Moyer changed the date to December 11 and initialed the change. Ewing was instructed to keep Charging Party and Scott separated and on different shifts as much as possible, that Scott was to work the a.m. shift and Charging Party the p.m. shift, that matter was confidential and she was not to discuss it with anyone, and that she to not behave in any way that could be perceived as retaliatory.

31. Respondent provided an Employee Performance Coaching Plan dated December 10, 2003 for Scott and signed by Moyer. Moyer changed the date to December 11 and initialed the change. Scott was instructed that the matter was confidential, that he should keep quiet about it, and that "[h]e is not to bother or behave in any way toward Jennifer that could be perceived as retaliation or continued harassment. Scott was suspended for three days and was told that future incidents would result in immediate dismissal. The due date of the action was immediate.

32. Respondent stated that Moyer and District Manager Rona Cornett (Cornett) informed Charging Party that they were considering moving her to the afternoon shift to keep her away from Scott, that Charging Party agreed to the change and did not voice objections, and that Charging Party stated she would allow Moyer and Cornett to listen to tape recordings she made of Scott's behavior.

33. Respondent stated that on December 18, 2003 Charging Party gave Cornett a copy of the tape recording and documents relating to store policies and certain events that happened at work, that Charging Party again expressed to Moyer that she did not want to have any dealings with Scott, that Moyer met with Company President Mark Schwartz and they made the decision to move Charging Party from the Ranch Mart store to the Fresh Start store in Custer to honor Charging Party's request concerning Scott and to give her the chance to work more hours than she had at Ranch Mart, and that Moyer contacted Charging Party and instructed her to meet with Fresh Start Store Manager JulieAnn and that Charging Party agreed to do this and get a work schedule.

34. Respondent stated that Charging Party met with JulieAnn on December 18, 2003 and agreed to report to work on the morning of December 19, 2003 to learn the duties of opening the store.

35. Respondent stated that on December 19, 20, and 21, 2003 Moyer and Cornett listened to the tape recordings made by Charging Party and on December 22, 2003 they determined that Charging Party had been subjected to "inappropriate harassment" by Scott.

36. Charging Party submitted a typed summary of an audio tape recording made on November 19, 21, 24, and 25, 2003 and December 5, 2003. Charging Party identified repeated incidents where Scott cursed, used vulgar and profane language, made repeated comments of a sexual nature to employees about customers and employees, and referred to women as "bitches" and "whores." On November 25 Scott put his arm around Charging Party "...hanging on me and touching me..." when she tells him she needs 10 feet of personal space.

37. In a memorandum dated December 22, 2003 Moyer wrote to Charging Party, Scott, and Ewing stating in part that evidence did not exist to confirm sexual harassment and/or an offensive work environment under the following categories: verbal conduct of a sexual nature in the workplace, offensive verbal conduct in the workplace, and conduct condoned by management through the inaction of management when notified by a witness. Moyer recommended that disciplinary action be taken against Ewing and Scott, that retaliation against Charging Party is prohibited, that coaching regarding job performance be applied consistently, that posters regarding the harassment policy be distributed to all stores, and that store managers will be educated regarding harassment and policy.

38. Respondent stated that as a result of the investigation on December 22nd Ewing received a step 2 warning, Scott received a step 2 warning and three days suspension without pay, and both employees were warned that step 3 would result in termination of employment.

39. Respondent stated that on December 22, 2003 Moyer received a call from JulieAnn who reported that Charging Party failed to report to work on the morning of December 19th and did not show up for work on December 22nd and that JulieAnn attempted to contact Charging Party by phone but Charging Party did not answer.

40. Respondent stated that on December 22, 2004 Moyer telephoned Charging Party and left a message for Charging Party to call her to discuss why she did not come to work.

41. Respondent stated that later Charging Party called Moyer and left a message that she no longer wanted to work for Respondent.

42. Charging Party's Employee Termination Notice dated December 23, 2003 and signed by Moyer shows that Charging Party was to work at location #8 temporarily, that Charging Party spoke to the Location #8 supervisor and agreed to start in the morning, that Charging Party did not report to work for the Friday and Monday shifts and that

she left a message on Moyer's phone, "...that she did not want to work @ that location [20][1] so she was resigning."

43. Charging Party stated that she told Moyer that she did not want to be transferred to the other store.

## ANALYSIS

The standard of proof the Division of Human Rights applies to discrimination charges under the South Dakota Human Relations Act of 1972, SDCL chapter 20-13, is probable cause. SDCL § 20-13-1.1 defines probable cause in the following manner:

> For the purposes of findings under this chapter, probable cause is defined as a determination that it is more likely than not that the charging party and members of a class, or both, were discriminated against based on a violation of this chapter. The likelihood that discrimination occurred is assessed based upon evidence that establishes a prima facie case, and if the respondent has provided a viable defense, whether there is evidence of pretext.

SDCL § 20-13-54 provides that this chapter shall be construed broadly to effectuate its purposes.

The Division of Human Rights has long cited *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973) and *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981) for guidance and analyzing charges of discrimination. The South Dakota Supreme Court also relied on these cases in *In re Gannon*, 315 N.W.2d 478 (S.D. 1982). *Green* and *Burdine* are the cornerstones to the disparate treatment theory of discrimination. Given the similarities between these cases and the probable cause standard in SDCL § 20-13-1.1, this guidance is still applicable for determining the establishment of a prima facie case, viable defense, and pretext.

In her first cause of action Charging Party alleges she was subjected to sexual harassment. Conduct such as "unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature" may be actionable as sexual harassment. *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 68, 106 S.Ct. 2399, 2406, 91 L.Ed.2d 49 (1986) (quoting 29 C.F.R. § 1604.11(a) (1985)). Such conduct constitutes sexual harassment when:

> (1) submission to such conduct is made either explicitly or implicitly a term or condition of an individual's employment, (2) submission to or rejection of such conduct by an individual is used as the basis for employment decisions affecting such individual [quid pro quo], or (3) such conduct has the purpose or effect of unreasonably interfering with an individual's work

---

[1] The "20" appeared to be added in after the report was written. Respondent's records show that Location #20 was the store supervised by Ewing where Charging Party and Scott worked.

performance or creating an intimidating, hostile, or offensive working environment [hostile environment].

29 C.F.R. § 1604.11(a) (1998).

The initial step in determining probable cause in a sexual harassment case is also whether evidence exists that establishes a prima facie case. In *Huck v. McCain Foods*, 479 N.W.2d 167, 169 (S.D. 1991), the South Dakota Supreme Court recognized sexual harassment as a violation of SDCL § 20-13-10. The *Huck* court also noted that § 20-13-10 is akin to the analogous section in Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) et.seq., which has been interpreted by federal counts to embody sexual harassment charges. Id. In recognizing sexual harassment claims under § 20-13-10, the court adopted the five prong test from *Hall v. Gus Construction Co., Inc.*, 842 F.2d 1010, 1013 (8th Cir. 1988). In order to prove sexual harassment, the charging party must show that:

(1) she belongs to a protected class; (2) she was subjected to unwelcome sexual harassment; (3) the harassment was based on sex; (4) the harassment affected a term, condition, or privilege of employment; and, (5) the employer knew or should have known of the harassment in question and failed to take proper remedial action.

*Huck*, 479 N.W.2d at 169-70 (quoting *Moylan v. Maries County*, 792 F.2d 746, 749 (8th Cir. 1986)). Charging Party is a member of a protected class because of her sex, female. It is more likely than not that Charging Party was subjected to unwelcome sexual harassment. The tape recordings made by Charging Party aided Respondent in determining that Charging Party had been subjected to inappropriate harassment by Scott. The harassment was based on sex. Nick Scott, a male, repeatedly subjected Charging Party, a female, to sexual harassment. Scott made comments of a sexual nature and referred to women as bitches and whores. It is more likely than not that the harassment affected a term, condition, or privilege of employment. Charging Party was subjected to a sexually hostile environment by Scott's behavior. Respondent knew of the harassment in question and failed to take prompt and proper remedial action. Charging Party complained to Owner Mark Schwartz on November 26, 2003. Moyer did not begin an investigation until December 11, 2003. More than two weeks passed before Respondent began to investigate Charging Party's claims. There was no evidence that any adverse action was taken against Scott before Charging Party quit her job. Given these facts Charging Party has established the elements necessary to prove sexual harassment.

Charging Party alleged in her second cause of action that she was retaliated against by having her hours cut and being written up, rescheduled, and moved to another store and thereby being forced to quit. The order and allocation of proof set down in *Green* for a refusal-to-hire case under the general disparate treatment theory has been almost universally adapted and applied to retaliation cases. In a discrimination suit alleging retaliation, a prima facie case can be established by showing: (1) that the charging party "engaged in a statutorily protected activity; (2) the employer took an adverse personnel action; and (3) there was a causal connection between the two." *Coleman-Santucci v*

*Secretary, U.S. Dep't of Health and Human Services*, 754 F. Supp. 209, 216 (D.D.C. 1991). Once the charging party has shown prima facie retaliation, the respondent has the burden of articulating a legitimate nondiscriminatory reason for the adverse action. *Womack v. Munson*, 619 F.2d 1292, 1296 (8th Cir. 1980). If a legitimate reason is given, the charging party then must demonstrate (provide evidence) that the reason was, in fact, pretextual. Id. The charging party does not bear the burden of proving she was a victim of discrimination in order to file a retaliation charge. Courts have held that retaliatory discharge for an employee's opposition to a practice reasonably believed by the employee to be unlawful at the time of discharge is illegal, since contrary holding would chill legitimate assertion of employee rights and tend to force employees to file formal charges rather than attempting informal adjustment of grievances. See, *Burg v. La Crosse Cooler Co.*, 612 F.2d 1041, 1043 (7th Cir. 1980); *Love v. RE/MAX of America, Inc.*, 738 F.2d 383, 385 (10th Cir. 1984). Charging Party engaged in statutorily protected activity when she complained to Schwartz on November 26, 2003 and to Moyer on December 9, 2003 about being harassed by Scott. Charging Party testified that after she complained to Moyer she began receiving write ups, her hours were cut, she was scheduled for nights, and was moved to another store where her hours were cut even more, all adverse employment actions. Charging Party has shown a causal connection by establishing a close temporal proximity between the statutorily protected activity and the adverse actions.

Respondent stated that when Ewing issued Charging Party a write-up on December 11, Ewing was unaware of Charging Party's complaint and Charging Party was moved to a different shift and to a different store to separate her from Scott.

Respondent acknowledged that Charging Party was moved to a different shift and a different store after she complained. After Charging Party complained Ewing wrote up Charging Party criticizing her performance on December 11, 16, and 19, 2003. There was no evidence of previous write-ups before Charging Party complained. The dates on Ewing and Scott's Employee Performance Coaching Plans were changed from December 10 to December 11. Charging Party was scheduled for shifts ending later in the evening than she was previously scheduled for and moved to another store, a decision made by Moyer. Charging Party testified that she told Moyer that she did not want to be transferred to another store. Evidence regarding the transfer provided by Respondent appears to have been altered in Respondent's favor. The evidence does not show that there was a significant change in the number of hours worked by Charging Party. The evidence showed that before December 11th less than one third of Charging Party's scheduled shifts that ended after 6:00 p.m. and that beginning December 11 more than one half of her scheduled shifts ended after 6:00 p.m. Charging Party testified that these actions adversely affected her. Respondent disadvantaged Charging Party by scheduling her for a later shift and transferring her to another store when no action was taken against her harasser. Given these facts the Division finds that it is more likely than not that Charging Party was a victim of retaliation.

Finally Charging Party alleged that because of the treatment she received she was forced to quit, that she was constructively discharged. To establish a prima facie case of

constructive discharge for the purpose of determining probable cause, the charging party must demonstrate that: (1) she is a member of a protected class (e.g., race, color, creed, religion, sex, national origin, ancestry, or disability), (2) she was performing her work satisfactorily, (3) that the employer made working conditions so difficult that a reasonable person in the employee's position would feel compelled to resign. *Derr v. Gulf Oil Corp.*, 796 F. 2d 340, 344 (10th Cir. 1986).

Charging Party is a member of a protected class based on her sex, female. There is no evidence that Charging Party's performance was unsatisfactory before she complained of sexual harassment. It is more likely than not that her performance was satisfactory. Charging Party was subjected to sexual harassment. Respondent did not take prompt and proper remedial action. Charging Party was treated adversely after she engaged in protected activity. It is more likely than not that Respondent made working conditions so difficult that a reasonable person in the Charging Party's position would feel compelled to resign.

Respondent did not articulate a viable defense.

## DETERMINATION

Probable cause exists to believe Respondent is in violation of the South Dakota Human Relations Act of 1972, SDCL chapter 20-13 with respect to Charging Party's allegations of discrimination and retaliation. Accordingly, SDCL § 20-13-32 states that immediate attempts to eliminate the discriminatory or unfair practice by conference or conciliation shall be taken. Enclosed with this determination is a proposed conciliation agreement

EEOC Form 161-B (3/98)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| To: Jennifer L. Van Meter<br>P.O. Box 263<br>Custer, SD 57730 | From: Denver District Office<br>303 East 17th Avenue<br>Suite 510<br>Denver, CO 80203 | RECEIVED<br><br>MAR 0 8 '05<br><br>L..S & L, P.C. |

☐  *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR § 1601.7(a))*

| Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 32J-2004-00072 | Ronald L. Houser,<br>S&L Coordinator | (303) 866-1340 |

*(See also the additional information enclosed with this form.)*

NOTICE TO THE PERSON AGGRIEVED:

Title VII of the Civil Rights Act of 1964 and/or the Americans with Disabilities Act (ADA): This is your Notice of Right to Sue, issued under Title VII and/or the ADA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII or the ADA must be filed in federal or state court WITHIN 90 DAYS of your receipt of this Notice or your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

[X]  More than 180 days have passed since the filing of this charge.

[ ]  Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of the charge.

[X]  The EEOC is terminating its processing of this charge.

[ ]  The EEOC will continue to process this charge.

Age Discrimination in Employment Act (ADEA): You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, the paragraph marked below applies to your case:

[ ]  The EEOC is closing your case. Therefore, your lawsuit under the ADEA must be filed in federal or state court WITHIN 90 DAYS of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

[ ]  The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of your charge, you may file suit in federal or state court under the ADEA at this time.

Equal Pay Act (EPA): You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.

If you file suit based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

*Jeanette M. Leino*    MAR 0 2 2005

Enclosure(s)

**Jeanette M. Leino,**
**Acting Denver District Director**

*(Date Mailed)*

cc:  Mark Shwartz
FRESH START
722 Main Suite #6
Spearfish, SD 57783

EXHIBIT

Thu Jun  2 16:45:53 2005

UNITED STATES DISTRICT COURT

RAPID CITY, SD

Receipt No.    500 28649
Cashier        jholso

Tender Type  CHECK

Check Number: 61971

Transaction Type   N

DO Code     Div No       Acct
  4673         5        510000

Amount                $    150.00

LYNN JACKSON LAW FIRM, PO BOX 8250,
RAPID CITY SD 57709-8250

CIV. 05-5044 VAN METER V FRESH START
(PARTIAL CIVIL FILING FEE)


cn
Thu Jun  2 16:47:37 2005

UNITED STATES DISTRICT COURT

RAPID CITY, SD

Receipt No.    500 28650
Cashier        jholso

Check Number:  51972

DO Code     Div No
  4673         5

Sub Acct Type Tender      Amount
1:510000  N       2        40.00
2:086900  N       2        60.00

Total Amount          $    100.00

LYNN JACKSON LAW FIRM PO BOX 8250 RA
PID CITY SD  57709-8250

CIV 05-5044 VAN METER V FRESH START
(PARTIAL CIVIL CASE FILING FEE)

cn